# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LUKE WAINE CAINES, JR.,** ) | **NO. CV 19-666-PA (KS)** |
| ) | |
| **Plaintiff,** ) | |
| ) | **REPORT AND RECOMMENDATION OF** |
| **v.** ) | **UNITED STATES MAGISTRATE JUDGE** |
| ) | |
| **DR. M. INTERIAN, DDS,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.

## INTRODUCTION

On April 12, 2019, Luke Waine Caines, Jr. ("Plaintiff"), a California state prisoner proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, asserting deliberate indifference to his serious medical needs (the "Complaint"). (Dkt. No. 1.)  On June 24, 2019, the Court ordered service of the Complaint on Defendant Dr. M.

1

1  Interian, DDS ("Defendant") in his individual and official capacity.  (Dkt. Nos. 11-13.)  On
2  November 6, 2019, Defendant filed a Motion to Dismiss the Complaint for failure to exhaust
3  administrative remedies and for failure to state a claim (the "Motion").  (Dkt. No. 28.)  On
4  January 6, 2020, Plaintiff filed Objections to the Motion (the "Opposition").  (Dkt. No. 43.)
5  Defendant did not file a Reply.  The matter is now fully briefed and ready for decision without
6  oral argument.

7
8                                    **THE COMPLAINT**
9
10         Plaintiff brings this lawsuit against Defendant, a dentist at the prison where Plaintiff is
11  incarcerated, in his individual and official capacity.  (Complaint at 3.)[1]  The Complaint
12  contains the following factual allegations.  On or about July 12, 2018, Plaintiff complained to
13  Defendant that a crown Defendant had placed on Plaintiff's tooth was too tight, causing nasal
14  congestion and a sharp pain in his head and the left side of his face.  (*Id.* at 7.)  The next day,
15  a part of the crown dislodged, causing Plaintiff to experience severe pain and bleeding from
16  the left side of his mouth.  (*Id.*)  On July 16, 2018, Defendant discontinued Plaintiff's blood
17  thinner medication and agreed to remove the crown on July 18, 2018.  (*Id.* at 7-8, 11.)  After
18  Plaintiff's extraction, he became severely congested and Defendant informed him it was due
19  to the anesthetic and would wear off in a few hours.  (*Id.* at 8)  Plaintiff alleges he suffered
20  from excessive bleeding because Defendant did not prescribe him any coagulant medications
21  or antibiotics.  (*Id.*)

22
23         On July 29, 2018, Plaintiff completed a Health Care Request Form (Form CDC 7362),
24  requesting a dosage increase for his medication because he continued to have pain in the left
25  side of his face; he was also bleeding in the extraction area and informed Defendant that the
26
27  _____
   [1]    Plaintiff did not separately number the paragraphs of the Complaint or the attached exhibits; therefore, the Court
28  cites to the relevant page numbers of the pleading and the exhibits attached to the Complaint designated by pagination of
   the Court's Electronic Case Filing system.

                                            2

extraction site was infected.  (*Id.* at 8, 12-13.)  According to Plaintiff, Defendant knew that the infection was caused because of the delay in treatment.  (*Id.* at 8.)  On August 2, 2018, two weeks after the extraction, Defendant prescribed Amoxicillin, which caused Plaintiff to experience diarrhea, hemorrhoids, and anal bleeding.  (*Id.* at 8, 10, 16.)  On August 7, 2018, Plaintiff informed Defendant that he was still in pain and the bleeding continued periodically from the extraction site; he also informed Defendant that he had found a small piece of metal resembling the crown.  (*Id.* at 8, 14, 17.)  Defendant switched Plaintiff's medications from Amoxycillin to Clindamycin and Chlorpheniramine.  (*Id.* at 8.)  According to Plaintiff, Defendant should have known that there was an antra sinus fissure due to his complaint of constant congestion and the delayed healing.  (*Id.*)  On August 9, 2018, Plaintiff completed another Health Care Request Form, stating that he had an odorous "greenish and brown fluid" flowing from the extraction site, which looked like pus.  (*Id.* at 15.)

During the August 15, 2018 follow-up appointment , Plaintiff informed Defendant that he continued to experience pain in the extraction site and congestion.  (*Id.* at 8, 18.)  Plaintiff asserts that, at this point, Defendant should have known there was a serious dental problem due to the continued pain and trouble healing.  (*Id.* at 8.)  On August 21, 2018, Plaintiff informed another dentist that there was something protruding from the extraction site causing pain, and that he experienced daily congestion.  (*Id.* at 9, 19.)  The other dentist determined that Plaintiff had bone spicule and on oral antra fistula that was causing the pain at the extraction and the congestion was also compromising the healing process.  (*Id.* at 9, 20-21.)  Plaintiff thereafter had oral surgery to treat the bone spicula and oral antral fistula.  (*Id.* at 9.)

Based on these allegations, Plaintiff asserts that Defendant showed deliberate indifference to Plaintiff by breaching his duty of care (Claim 1, a state law claim); violated his Eighth Amendment rights by intentionally ignoring his serious dental needs and causing unnecessary and wanton infliction of pain and suffering (Claim 2, a federal law claim); and showed deliberate indifference by causing mental and emotional injury (Claim 3, a state law

1   claim).  (*Id.* at 7, 9.)  Plaintiff seeks damages of $200,000 for  pain and anguish he suffered

2   due to Defendant's violations, injunctive relief compelling Defendant to provide better dental

3   care to inmates, and any such additional relief the Court deems necessary.  (*Id.* at 10.)

4

5           Plaintiff attaches several documents to his Complaint, including medical notes about his

6   treatment (cited in relevant part in the foregoing summary of Plaintiff's allegations, and in the

7   discussion *infra*) and documents related to Plaintiff's use of the administrative grievance

8   process.[2]  (*Id.* at 11-29.)  As to that process, Plaintiff attaches his administrative grievance

9   complaining of Defendant's dental treatment (*id.* at 26-29); an Institutional Level Response to

10  his grievance, determining that no intervention was warranted (*id.* at 22-23); and a

11  Headquarters' Level Response, determining that no intervention was warranted (*id.* at 24-25).

12

13                                  **THE MOTION**

14

15          Defendant asserts that the Complaint must be dismissed for several reasons.  First,

16  Plaintiff's deliberate indifference claim is barred because he failed to exhaust his

17  administrative remedies before bringing this action.  (Motion at 4-6.)  Second, Plaintiff fails

18  to state a claim for deliberate indifference to his serious medical needs; specifically, he cannot

19  sustain a deliberate indifferent claim because (1) his condition was not severe; (2) he cannot

20  prove that Defendant acted with a culpable state of mind; (3) the alleged indifference did not

21  cause Plaintiff harm; and (4) the alleged indifference was an isolated occurrence.  (*Id.* at 6-

22  12.)  Third, Defendant argues that Plaintiff's state law claims should be dismissed because

23

24  _____

25  [2]      Although as a general matter, the Court may not consider any material outside the pleadings when ruling on a Rule
    12(b)(6) motion, the Court *may* consider documents that are physically attached to the Complaint if the Complaint
26  necessarily relies on them and if their authenticity is not contested.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th
    Cir. 2001).  Here, the authenticity of the documents attached to the Complaint is not contested; in fact, Defendant relies
27  on many of those documents in arguing for dismissal.  (*See generally* Motion.)  Additionally, Plaintiff directly refers to
    many of attachments in the body of his Complaint (*see* Complaint at 7-10 (citing exhibits)), and the attachments contain
28  information which relate directly to the claims at issue.  Accordingly, the Court finds that the documents attached to the
    Complaint are properly considered in deciding the instant Motion.

                                         4

1    Plaintiff's federal claim fails and the Court should decline to exercise supplemental

2    jurisdiction over Plaintiff's state law claims.  (*Id.* at 12-13.)

3

4        In the Opposition, Plaintiff first asserts that he has, in fact,  exhausted his administrative

5    remedies.  (Opposition at 2-4.)  Second, he maintains that his deliberate indifference claim

6    satisfies the objective and subjective prongs of the constitutional analysis.  (*Id.* at 4-13.)

7    Specifically, his dental issue constituted a "serious medical need" because it was perceived as

8    important and worthy of treatment by him, he experienced chronic and substantial pain, and

9    his pain significantly affected his daily activities.  (*Id.* at 6-7.)  Plaintiff argues that Defendant

10   knew of a substantial risk of harm to Plaintiff absent proper treatment and yet, failed to

11   adequately treat Plaintiff's condition.  (*Id.* at 7-9.)  Further, Plaintiff contends he can sustain a

12   deliberate indifference claim because Defendant failed to investigate the condition sufficient

13   to make an informed judgment about the scope of Plaintiff's need, failed to provide adequate

14   treatment, and delayed Plaintiff's treatment. (*Id.* 9-12.) Plaintiff also contends that Defendant's

15   overall treatment of Plaintiff's complications was not an isolated incident and was wholly

16   inadequate.  (*Id.* at 12-13.)  Third, Plaintiff argues that the Court should exercise supplemental

17   jurisdiction over Plaintiff's state law claims of negligence in general and medical negligence

18   because the state and federal claims derive from a common nucleus of operative facts.  (*Id*. at

19   14-15.)  Finally, Plaintiff contends that the Court should take judicial notice that Defendant

20   did not dispute Plaintiff's allegations in Claims 1 and 3, and this "acquiescence" should be

21   deemed by the Court as an acceptance by Defendant of Plaintiff's allegations as true.  (*Id*. at

22   15-16.)  Defendant has not filed a Reply to the Opposition.

23

24                                **LEGAL STANDARDS**

25

26       Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

27   complaint for failure to state a claim upon which relief can be granted.  A defendant is entitled

28   to dismissal under Rule 12(b)(6) when a complaint fails to state a cognizable legal theory or

alleges insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Conclusory allegations are insufficient. *Id.* at 678-79. Although a complaint need not set forth detailed factual allegations, "a formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In addition to adequate factual allegations, a complaint must include fair "notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011).

Courts must "continue to construe *pro se* filings liberally when evaluating them under *Iqbal*, particularly in civil rights cases." *Jackson v. Barnes*, 749 F.3d 755, 763-64 (9th Cir. 2014) (citation omitted). Additionally, on review of a Rule 12(b)(6) motion, the Court accepts all facts alleged in a complaint as true and draws all reasonable inferences in favor of the plaintiff. *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 614 (9th Cir. 2014). However, for an allegation to be "entitled to the assumption of truth," it must set forth a non-conclusory factual allegation rather than a legal conclusion. *Iqbal*, 556 U.S. at 679. Additionally, the Court need not accept as true allegations that contradict facts that have been judicially noticed or by exhibit attached to a complaint. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation and internal quotation marks omitted). Courts must also consider an "obvious alternative explanation" for the defendants' actions. *Eclectic Props. E. LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 682). A complaint

6

1    may be dismissed when the defendant offers a plausible alternative explanation that is so

2    convincing it renders plaintiff's explanation implausible.  *Id.* (citing *Starr*, 652 F.3d at 1216).

4           As noted above, generally, when deciding a motion to dismiss, a court may not consider

5    documents outside the pleadings, but the court may consider documents physically attached to

6    a complaint if their "authenticity is not contested' and the plaintiff's complaint "necessarily

7    relied on them."  *Lee,* 250 F.3d at 688 (internal citations and quotation marks omitted); *see*

8    *also infra*  at 4 n.2.

10          Finally, a court must give a *pro se* litigant leave to amend the complaint unless "it is

11   absolutely clear that the deficiencies of the complaint could not be cured by amendment."

12   *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted); *Lira*

13   *v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005).  However, if amendment of the pleading

14   would be futile, leave to amend may be denied.  *See Ventress v. Japan Airlines*, 603 F.3d 676,

15   680 (9th Cir. 2010); *see also Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (leave to

16   amend is not appropriate when "the pleading 'could not possibly be cured by the allegation of

17   other facts'") (citation omitted).

**DISCUSSION**

20   **I.     Exhaustion of Administrative Remedies**

22          **A. Legal Standards**

24          As part of the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended and

25   strengthened the requirement that prisoners pursuing civil rights claims under § 1983 or

26   another federal statute must first exhaust administrative remedies.  *See* 42 U.S.C. § 1997e(a).

27   If a prisoner has not exhausted administrative remedies on a claim, a court must dismiss the

28   claim without prejudice.  *Lira*, 427 F.3d at 1170.  The Supreme Court has held that the PLRA

7

requires a prisoner to complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the prisoner seeks money damages and such relief is not available under the administrative process. *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (requiring inmates to substantively and procedurally exhaust all claims through administrative remedies before filing suit in court). Moreover, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Because PLRA exhaustion is not jurisdictional, the Ninth Circuit holds that failure to exhaust administrative remedies "should be treated as a matter in abatement during the course of the litigation." *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (citation omitted). In deciding such a motion, "the court may look beyond the pleadings and decide disputed issues of fact." *See id.* at 1119-20. If a prisoner has not completed his administrative remedies before filing his federal suit and administrative remedies are still available, the court must dismiss the action without prejudice to the prisoner filing a new action after he has completed his administrative remedies. *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (*per curiam*).

**B. California's Prisoner Administrative Grievance Process**

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." CAL. CODE REGS. tit. 15, § 3084.1(a). Effective September 1, 2017, the CDCR

adopted a two-step procedure for healthcare grievances.[3] *See id.*, § 3999.225, *et seq.*; *see also Garrett v. Finander*, 2019 WL 7879659, at *3 (C.D. Cal. Dec. 5, 2019) (discussing grievance procedure).   Under the procedure, a health care grievance must be submitted on "CDCR 602 HC" form.  Cal. Code. Regs. tit. 15, § 3999.227(a).  First, the prisoner must submit the form "to the HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of:  (1) the action or decision being grieved, or (2) initial knowledge of the action or decision being grieved."  *Id.* § 3999.227(b).  Second, "[i]f dissatisfied with the institutional health care grievance disposition, the grievant may appeal the disposition . . . to HCCAB [Health Care Correspondence and Appeals Branch] . . . within 30 calendar days plus five calendar days for mailing[.]"  *Id.* § 3999.229(a).

## C. Analysis

Defendant argues that the Complaint must be dismissed because Plaintiff failed to exhaust administrative remedies as to his Eighth Amendment deliberate indifference claim.  (Motion at 4-6.)   He asserts that Plaintiff's administrative grievances show that Plaintiff pursued the grievance process, but only to the extent that he sought redress of his eventual state law claims, not the federal deliberate indifference claim.  (*Id.* at 4-5.)   In response, Plaintiff contends that he was not aware that he had to explicitly state on his grievance forms that his Eighth Amendment rights were violated and he should be afforded leniency given his *pro se* status.  (Opposition at 3-4.)

The documents that Plaintiff attaches to his Complaint show that on August 16, 2018, he completed a Health Care Grievance CDCR Form 602.  (Complaint at 26-29.)  He described his course of treatment by Defendant and his ongoing dental issues, explaining that he

---

[3]   The parties do not dispute that events alleged in the Complaint took place after the two-step procedure came into effect on September 1, 2017.  Accordingly, the Court need not discuss the three-step grievance procedure, which was in effect prior to that date.  *See* Cal. Code Regs. tit. 15 §§ 3084.1(b), 3084.7.

experienced pain, numbness, tingling, and burning for weeks until a part of the crown on his tooth dislodged; and even more pain after the crown was removed.  (*Id.* at 26.)  Plaintiff requested to be seen by a different dentist; he asserted that Defendant should have taken him off medication that was hindering his recovery, should have known that the antibiotics he prescribed had a potentially negative interaction with his other medication, and should have ensured there were no "particles" in his mouth after the extraction.  (*Id.* at 28.)  Plaintiff explained that he saw a different dentist, who prescribed him a different course of treatment, but that his issues persisted due to the "constant negligence and malpractice of" Defendant and the medical staff at the prison.  (*Id.*)

On September 11, 2018, Plaintiff received an Institutional Level Response.  (*Id.* at 22-23.)  At this level, it was determined that no intervention was required; the grievance respondent discussed Plaintiff's course of treatment—including his dental extraction from which complications arose, ultimately resulting in consultation and surgery performed by an oral surgeon—and noted that Plaintiff was now awaiting a follow-up appointment.  (*Id.* at 22.) Plaintiff's complications that were compromising the healing of the extraction site were noted as having been identified and treated, and no further intervention was required.  (*Id.* at 23.) Plaintiff was encouraged to maintain communication with his healthcare providers and was instructed how to appeal the Response if he was dissatisfied with it.  (*Id.*)

On September 17, 2018, Plaintiff appealed the Institutional Level Response, stating that he was dissatisfied with the initial response because the complications he experienced as a result of his extraction still affected him.  (*Id.* at 27.)  He claimed that he still experienced congestion and nerve issues on the left side of his face. (*Id.*)  Further, the medication that Defendant prescribed him was not effective, causing him to experience diarrhea, develop hemorrhoids, and develop an infection that compromised the healing process.  (*Id.*)  On December 13, 2018, Plaintiff received a Headquarters' Level Response. (*Id.* at 24-25.)  At this level, it was determined that no intervention was required because Plaintiff's Institutional

1   Level Response appropriately addressed his grievance and the care he received was "timely

2   and within the standard of care, with no indication to support the need for an evaluation by an

3   outside dentist." (*Id.*)  Additionally, Plaintiff failed to provide documentation to support his

4   allegation that he received negligent care and his claims were refuted by his health record and

5   prison health care staff familiar with his condition. (*Id.* at 25.) The Response noted that "[t]his

6   decision exhausts [Plaintiff's] administrative remedies." (*Id.*)

7

8       Whether Plaintiff successfully exhausted his administrative remedies as to his federal

9   constitutional claim requires further consideration of the state exhaustion procedure.   The

10  scope of exhaustion depends on the scope of the administrative remedies provided by the state.

11  *See Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, and not the PLRA, that define

12  the boundaries of proper exhaustion.").   In California, inmate health care grievances must

13  "describe the specific complaint that relates to their health care which they believe has a

14  material adverse effect on their health or welfare." Cal. Code. Regs. tit. 15, § 3999.227(a).

15  "[W]hen a prison's grievance procedures do not specify the requisite level of detail . . . 'a

16  grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'"

17  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646,

18  650 (7th Cir. 2002)).   "'[T]he grievant need not lay out the facts, articulate legal theories, or

19  demand particular relief.   All the grievance need do is object intelligibly to some asserted

20  shortcoming.'" *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Strong*); *see

21  also Griffin*, 557 F.3d at 1120 (providing that grievance need not include legal terminology or

22  legal theories unless needed to provide notice of the harm being grieved, or the facts necessary

23  to prove the elements of an eventual claim).   The purpose of a grievance is to alert the prison

24  to a problem and facilitate its resolution, not to lay the groundwork for litigation. *Griffin*, 557

25  F.3d at 1120.   It must simply include sufficient information "to allow prison officials to take

26  appropriate responsive measures." *Id.* at 1121 (citation and internal quotation omitted).

27  //

28  //

11

After reviewing the Complaint, its attachments, and the relevant legal principles, the Court concludes that Plaintiff has sufficiently alleged he exhausted his administrative remedies as to all of the claims in the Complaint. The attachments to the Complaint —the authenticity of which is uncontested— reflect that, at both stages of the grievance process, Plaintiff outlined the factual basis for his grievance which is consistent with the facts outlined in the Complaint underlying his federal deliberate indifference claim. Plaintiff asserted that Defendant's actions in response of his dental issues did not adequately treat that condition. Thus, Plaintiff exceeded the Ninth Circuit's requirements, as his grievance "object[ed] intelligibly to [Defendant's] shortcoming" and he "alert[ed] the prison to the nature of the wrong for which redress is sought." *Wilkerson*, 772 F.3d at 839; *Griffin*, 557 F.3d at 1120. Plaintiff was not required to explicitly state that Defendant was deliberately indifferent to his serious medical needs because a grievance need not include legal terminology. *Griffin*, 557 F.3d at 1120; *cf. Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2014) (reasoning that plaintiff did not need to identify doctor by name to exhaust grievance process against him because neither the PLRA nor state regulations required inmate to identify responsible parties). The grievance clearly laid the groundwork for a federal deliberate indifference claim. Accordingly, the Court concludes that dismissal on exhaustion grounds is not warranted.

## II.   Plaintiff's Constitutional Deliberate Indifference Claim

### A. Legal Standards.

Claims by prisoners for denial of medical care are reviewed under an Eighth Amendment standard, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976), which also covers claims regarding inadequate dental care, *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). To support such a deliberate indifference claim, a plaintiff must allege both that a deprivation of medical care was objectively serious, and that a defendant acted with a

subjectively culpable state of mind amounting to at least "deliberate indifference." *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Defendant argues that Plaintiff fails to state a deliberate indifference claim because: (1) his condition was not severe; (2) he cannot establish that Defendant acted with a culpable state of mind; (3) the alleged indifference did not cause Plaintiff harm; and (4) the alleged indifference was an isolated occurrence. (Motion at 6-12.)  The Court turns to each argument in sequence.

## B.  Serious Medical Need

A medical need is serious if "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted).  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (collecting cases)); *Hunt*, 865 F.2d at 200-01.  Courts in this Circuit have found that pain resulting from dental issues may constitute a serious medical need.  *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) ("assum[ing], without deciding" that plaintiff's allegation of severe pain, infected teeth, cavities, and bleeding gums was a serious medical need); *Silverbrand v. Woodford*, 2010 WL 3635780, at *5 (C.D. Cal. Aug. 18, 2010) (finding that serious medical need existed where plaintiff experienced tooth loss, pain, infections, and other discomfort); *Evins v. Curry*, 2010 WL 476678, at *6 (N.D. Cal. Feb. 3, 2010) (finding that pain resulting from tooth decay was serious medical need).

In light of this precedent, Plaintiff has adequately stated the existence of a serious medical need.  Plaintiff alleges that he experienced severe pain in his teeth and face, persistent bleeding from the extraction site, and he suffered from an infection, which if left untreated would likely cause unnecessary and wanton infliction of pain.   (Complaint at 7-9.)  Additionally, Defendant's progress notes, which Plaintiff attaches to his Complaint show that Defendant found Plaintiff's condition worthy of comment and further treatment.  (*Id.* at 11, 13, 16-19.)  Thus, Plaintiff has adequately alleged that his condition was serious.  Accordingly, dismissal on the ground that the Complaint fails to allege that Plaintiff suffered a condition that evidenced a serious medical need is not warranted.

### C.  Defendant's State of Mind

If, as here, a serious medical condition is adequately alleged, then Court must next examine whether the pleading adequately alleges facts to support that the deliberate indifference standard can be met.  "Deliberate indifference" means that a defendant "knew of and disregarded" a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  This "requires more than ordinary lack of due care." *Id.* at 835 (quotation omitted).  A plaintiff's allegations must show both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096; *see also id.* (stating that "[i]ndifference may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care" (internal quotation marks omitted)).  Mere negligence or inadvertence does not amount to a constitutional violation. *See Estelle*, 429 U.S. at 105-06.  And mere difference of opinion between a doctor and prisoner, or between different doctors, concerning the appropriate medical care also does not constitute deliberate indifference. *See Estelle*, 429 U.S. at 105-07; *Legare v. Lee*, 2016 WL 633863, at *4 (C.D. Cal. Feb. 17, 2016)

(citing *Estelle*, *Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004), and *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Rather, a prisoner alleging an Eighth Amendment violation must allege facts sufficient to support a plausible inference that the "course of treatment the physician chose was medically unacceptable under the circumstances, and that the physician chose it in *conscious disregard* of an excessive risk to the plaintiff's health." *Ponce v. Gale*, 2014 WL 1407806, at *4 (C.D. Cal. Jan. 13, 2014) (citing *Toguchi* and *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)) (emphasis in original).

Attached to the Complaint are Defendant's progress notes documenting Plaintiff's treatment and Defendant's impressions of Plaintiff's condition.  (Complaint at 11, 13, 16-19.) Those notes reveal that on July 16, 2018, Defendant noted that he had received a call from Plaintiff, who was complaining about non-specific pain in the upper left quadrant of his mouth and pain bilaterally in his neck and the back of his head.  (*Id.* at 11.)  Upon examination, Defendant noted no external swelling and the nurse observed mild gingival swelling around the molar region in the upper left quadrant.  (*Id.*)  Defendant noted that Plaintiff had a prescription for Acetaminophen and Warfarin (an anticoagulant), and scheduled an appointment with Plaintiff.  (*Id.*)  On August 1, 2018, Defendant examined Plaintiff after his complaints of dental socket and head pain.  (*Id.* at 13.)  Defendant also noted Plaintiff's history of deep vein thrombosis, that he was on anticoagulants, and that he had a tooth extraction two weeks earlier.  (*Id.*)  Upon examination, Defendant saw that Plaintiff's dental socket (from which the tooth had been extracted) had "good closure" and there was no visible internal or external swelling or signs of osteitis.  (*Id.*)  However, there was an edematous area of tissue uncentered in the socket.  (*Id.*)  Defendant opined that Plaintiff's delayed healing was likely the result of the anticoagulants, with a possible infection secondary to delayed healing.  (*Id.*) He prescribed Plaintiff pain medication, instructed him on wound care instruction, and scheduled a follow-up appointment.  (*Id.*)

//

//

15

On August 2, 2018, the following day, Defendant prescribed Plaintiff Amoxicillin to keep out infection at the socket secondary to delayed healing, feeling that was the "prudent" decision following his examination. (*Id.* at 16.) On August 8, 2018, Plaintiff complained to Defendant that he was still sore and that the extraction site bled periodically throughout the day. (*Id.* at 17.) Defendant observed tenderness and a spongy mass of edematous tissue centered in the socket, but no pus discharge when probed. (*Id.*) He opined that Plaintiff may have a possible antral sinus fissure; changed Plaintiff's antibiotics from Amoxicillin to Clindamycin and Chlorpheniramine Phenylephrine; informed Plaintiff of the findings and gave him verbal and written instructions; and scheduled a follow-up appointment. (*Id.*) At the August 15, 2018 follow-up appointment, Plaintiff informed Defendant that he was still in pain. (*Id.* at 18.) Defendant noted that Plaintiff was experiencing delayed healing and had a likely oroantral sinus communication; but that the appearance of the socket remained unchanged from the prior week. (*Id.*) Defendant observed that Plaintiff's socket had complete closure, but that there was raised spongy tissue centered in the area. (*Id.*) Defendant referred Plaintiff for oral and maxillofacial surgery, and continued the antibiotics. (*Id.*)

On August 21, 2018, Plaintiff's second dentist to whom he was referred by Defendant noted that Plaintiff had been experienced a difficult post-extraction course and Defendant had reported the development of an oral antral fistula. (*Id.* at 19.) Plaintiff had no signs of acute orofacial injuries or infection; no bleeding, swelling, or abscesses; no pain grossly palpable along bilateral temporomandibular joint, muscles of mastication, paranasal sinuses, or neck node tenderness; and his oral mucosal tissues were pink, moist, and non-ulcerated. (*Id.*) The dentist noted premature granulation tissue in the closing extraction site, and noted a possible bone spicule with residual oral antral fistula. (*Id.*) Plaintiff underwent surgery, during which a bone spicule was removed, a small oral antra fistula was appreciated, and the buccal flap was reflected and scored to allow the flap to approximate the palatal extension. (*Id.*) Following the procedure, Plaintiff experienced some bleeding, but hemostasis was achieved with minor additional intervention. (*Id.*)

16

1   After carefully considering Plaintiff's allegations and the documents attached to the

2   Complaint, the Court concludes that while Plaintiff has shown that Defendant knew of a

3   substantial risk of harm to Plaintiff, he has not alleged sufficient facts to raise a plausible

4   inference that Defendant recklessly disregarded that risk of harm.  *See Twombly*, 550 U.S. at

5   555 (stating that factual allegations "must be enough to raise a right to relief above the

6   speculative level").   Plaintiff asserts that Defendant knew there was a substantial risk of harm

7   due to Plaintiff's delayed healing and persistent congestion.  (Complaint at 8.)  Defendant's

8   actions suggest that he did know there was a substantial risk of harm to Plaintiff because

9   responded to Plaintiff's complaints about continuing pain and referred Plaintiff to another

10  dentist who could perform oral surgery, who promptly examined and performed surgery on

11  Plaintiff (Complaint at 18-19).  *See Lopez v. Santoyo*, 2010 WL 3733024, at *14 (S.D. Cal.

12  June 17, 2010) (finding that defendant doctor knew there was substantial risk of harm to

13  plaintiff because he requested urgent care for plaintiff by referring him to an oral surgeon).

14

15  Nonetheless, these allegations do not plausibly evince that Defendant disregarded the

16  risk of serious harm.  Moreover, Plaintiff's allegations as to Defendant's state of mind are

17  contradicted by Defendant's progress notes.  Defendant took steps mitigate the risk to Plaintiff

18  as his condition worsened by referring Plaintiff to an oral surgeon, a more specialized dental

19  professional.[4]  *See id.*  Furthermore, the treatment records attached to the Complaint do not

20  support Plaintiff's conclusory assertion that Defendant's treatment of Plaintiff before the

21  surgery referral was "grossly inadequate."  (Opposition at 9.)  Rather, they establish that in the

22  month preceding the referral, Defendant ensured that Plaintiff received treatment, including

23  prescribing antibiotics and pain medication, and instructing Plaintiff about proper care for his

24  condition.  (*See, e.g.*, Complaint at 16-18 (prescribing antibiotics and pain medication to assist

---

[4]      At least one district court in this Circuit has found that a plaintiff may still allege a plausible deliberate indifference claim where the defendant refers the plaintiff for oral surgery and whether the defendant should have done more is a disputed fact.  *See Rainey v. Garcia*, 2010 WL 308280, at *4 (E.D. Cal. Jan. 19, 2010).  However, that case is distinguishable because, in that case, the defendant provided *no* preliminary treatment that would have prevented the plaintiff's pain and  deterioration of his condition.  *Id.*  Here, Defendant provided extensive preliminary treatment to Plaintiff in an effort to treat his condition.  (*See, e.g.*, Complaint ay 16-18.)

with delayed treatment, and changing the course of treatment when Plaintiff adversely reacted to medication).)  Even if Plaintiff believes that Defendant should have done more, where Defendant's actions were reasonable, Plaintiff's mere disagreement with the course of treatment does not establish Defendant's deliberate indifference. *See Estelle*, 429 U.S. at 105-07; *Legare*, 2016 WL 633863, at \*4; *Lopez*, 2010 WL 3733024, at \*14.

Had Defendant not responded at all to Plaintiff's persistent complaints or signs that Plaintiff's condition was becoming worse in spite of a prior course of treatment, such allegations might have shown a conscious disregard for Plaintiff's serious needs sufficient to defeat a motion to dismiss. *See Jett*, 439 F.3d at 1098 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994)).  But that is not the case here.  And a defendant does not show deliberate indifference when he prescribes a plaintiff medication that he has no reason to believe will result in the plaintiff's adverse reaction to the medication.  *See Toguchi*, 391 F.3d at 1059; *Martinez v. United States*, 812 F. Supp. 2d 1052, 1059 (C.D. Cal. 2010).

Finally, to the extent Plaintiff asserts that his treatment was delayed and Defendant should have referred him to surgery sooner, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  Defendant would only be deliberately indifferent if the delay of surgery was harmful.  *See id.*; *McGuckin*, 974 F.2d at 1060.  Here, the documents attached to the Complaint show that after surgery, Plaintiff suffered no complications, with the exception of some residual bleeding, which quickly abated. (Complaint at 19, 22-26.)  Thus, Plaintiff does not plausibly allege that he suffered harm from any delay in Defendant ordering the surgery.  Because Plaintiff' has not plausibly alleged facts that suggest Defendant knew of and consciously disregarded a substantial risk of harm to Plaintiff, Plaintiff's deliberate indifference claim must be dismissed.  The Court declines to address Defendant's remaining arguments for dismissal of the constitutional deliberate indifference claim.

1   Although leave to amend a *pro se* complaint is generally liberally granted, the Court
2   need not grant leave to amend if amendment would be futile.  *See Ramirez*, 334 F.3d at 861.
3   Here, given the extensive treatment records included with the Complaint, it does not appear
4   that Plaintiff can amend his pleading to cure the defects in his deliberate indifference claim.
5   Accordingly, the deliberate indifference claim  is dismissed with prejudice.

6

7   **III.    Plaintiff's State Law Claims**

8

9   Plaintiff contends that the Court should take judicial notice that Defendant did not
10  respond or raise genuine issues of dispute to Plaintiff's allegations in Claims 1 and 3, *i.e.*, the
11  state law claims, and this acquiescence should be deemed by the Court as an acceptance by
12  Defendant of Plaintiff's allegations as true. (Opposition at 15-16.) Plaintiff is incorrect.  His
13  state law claims rely on the same factual allegations as his federal claims; in fact, the fact that
14  the claims arose from a common nucleus of operative facts is the basis on which Plaintiff seeks
15  to maintain the Court's supplemental jurisdiction over those claims.  But because Plaintiff's
16  federal claim must be dismissed with prejudice, the Court declines to exercise supplemental
17  jurisdiction over Plaintiff's remaining state law claims (Claims 1 and 3).  28 U.S.C.
18  § 1367(c)(3).  Accordingly, Plaintiff's state law claims are dismissed  without prejudice to
19  resolution of those claims in state court.
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

**RECOMMENDATION**

IT IS RECOMMENDED that the District Judge issue an Order: (1) accepting this Report and Recommendation; (2) GRANTING the Motion; (3) DISMISSING the Complaint with prejudice in its entirety.

DATED:  March 4, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.